UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED MAR 30 11 41 AM '04
U.S. DISTRICT COURT
NEW HAVEN, CONN.

| | | |
|---|---|---|
| AMERICAN NATIONAL PROPERTY, | : | CIVIL ACTION |
| AND CASUALTY COMPANY | | |
| PLAINTIFF, | : | NO. 302CV1566 (MRK) |
| V | : | |
| PHILIP L. CAOUETTE; AND KIMBERLY: | | |
| CAOUETTE | | |
| DEFENDANTS. | : | MARCH 30, 2004 |

### DEFENDANT'S TRIAL BRIEF

Defendants hereby submit their trial brief in accordance with the Court's pre-trial order.

I.  INTRODUCTION

Plaintiff has brought this declaratory judgment action to determine whether it is obligated to cover an accident in which Defendant Philip Caouette was injured on October 9, 1998. On October 12, plaintiff processed a cancellation request that appeared to be a request by Defendant Kimberley Caouette to cancel the applicable policy (the "Policy") effective October 6. Defendants made a claim on the Policy on October 10. Plaintiff paid on the claim for more than two years, until it asserted on March 20, 2001 that the Policy had been cancelled October 6, 1998.

II.  ARGUMENT

A.  Minnesota Law Applies to This Dispute

Defendants agree that Minnesota law applies to resolution of this dispute. The contract was entered into and negotiated in Minnesota, and most importantly, the parties expected that the automobile that was covered by the Policy would be located in Minnesota

for the majority of the policy term. Reichhold Chemicals v. Hartford Accident & Indemnity Co., 252 Conn. 774, 781 (2000); Restatement (Second) Conflict of Laws, §193. Minnesota law should therefore apply to this dispute.

    B.    Plaintiff's Have the Burden of Establishing Cancellation

Insurers denying coverage on the basis that the policy was cancelled have the burden of showing that all conditions required for cancellation have been satisfied. Merchants and Farmers Mutual Casualty Company v. St. Paul-Mercury Indemnity Company, 214 Minn. 544, 546, 8 N.W.2d 827, 828 (1943) ("The party asserting the rescission bears the burden of proving it."). In Miller v. The Continental Insurance Company of New York, 152 Minn. 404, 406, 188 N.W. 1000 (1922), the court decided whether the insured's return of the policy caused the policy to be cancelled. The court held it depended on the insured's intent in surrendering the policy, and that it was the insurer's burden to prove this intent. The count found that the evidence that the insured had intended to cancel the policy was insufficient and remanded the case for a new trial. Similarly in this case, plaintiff must prove that defendants intended to cancel the policy was of the date that plaintiff processed the cancellation, and that all other conditions for cancellation have been met.

    C.    Cancellation of Insurance Depends on the Intent of the Parties

Rescission of an insurance policy depends on the intent of the parties as evidenced by their acts. Miller 152 Minn. at 406; Merchants and Farmers, 214 Minn. at 546. While courts invoke various principles regarding rescission of an insurance contract, intent is the touchstone. Even if the parties take actions or fail to take actions that in themselves would result in cancellation of the policy under the policy or by statute, courts will look to the

2

BROWN PAINDIRIS & SCOTT, LLP – ATTORNEYS AT LAW
2252 MAIN STREET – GLASTONBURY, CONNECTICUT 06033 – (860) 659-0700 – JURIS NO. 413634

intent of the parties in taking these actions. For instance, in <u>Miller</u>, *supra*, the customer returned the policy to the insurer's agent in the morning and a fire occurred that night. The Court held that the insurer had not proven cancellation because the customer testified that he had returned the policy intending to get other coverage. In <u>Merchants and Farmers</u>, 214 Minn. at 545, the customer informed the agent that she had obtained other insurance and that she would return the policy when her premium was refunded. Before the actual surrender of the policy, one of the insured had an accident. The court overturned the trial court's directed verdict in favor of the insurer and remanded the case for a new trial on the basis that the insured only intended to cancel the policy when she had obtained replacement insurance. <u>Id</u>. In <u>McQuarrie v. Waseca Mutual Insurance Co.</u>, 337 N.W.2d 685, 688 (Minn. 1983), the court found that the insurer's notice of cancellation was ineffective because it did not specify a cancellation date. The court held, however, that it constituted an offer by the insurer to cancel the policy, which the customer accepted by obtaining substitute coverage. In <u>Harper v. Lyndon Life Insurance Company</u>, 1999 Minn. App. LEXIS 382 (April 13, 1999), the insured requested cancellation of the policy, but did not sign the request for cancellation form included in the policy as the policy required. While the policy formalities had not been complied with, the court found that the customer's intent to cancel the policy was clear. It is therefore the intent of the parties, rather than an actions in themselves, that determine whether a policy has been cancelled.

The issue of intent also applies to determining the legal effect of the insured's negotiation of a premium refund check. Negotiation of a refund check in itself does not constitute rescission. <u>McQuarrie</u> 337 N.W.2d at 688. If an insured negotiates a check

3

BROWN PAINDIRIS & SCOTT, LLP – ATTORNEYS AT LAW
2252 MAIN STREET – GLASTONBURY, CONNECTICUT 06033 – (860) 659-0700 – JURIS NO. 413634

without knowledge of the effect of doing so, rescission is not established. The insured has to know that he is negotiating a check that constitutes a refund of a premium. <u>Mutual of Omaha Insurance Company v. Korengold</u>, 309 Minn. 457, 458 (1976); <u>Kilty v. Mutual of Omaha Insurance Company</u>, 287 Minn. 403, 404 (1970) (affirming jury verdict in favor of the insured even thought he insured had negotiated a premium refund check).

The Court should also look to general principles of contract law in construing insurance policies. <u>Edgley v. Lappe</u>, 342 F.2d 884 888 (8th Cir. 2003). Under principles of contract law, an offer can be revoked prior to the offeree's acceptance of the offer. <u>Elliott v. Mitchell</u>, 311 Minn. 533, 535 (Minn., 1976); Restatement <u>of Contracts (Second)</u> §36. Once an offer is revoked, no subsequent acceptance by the offeree can be effective to create a contract. <u>New England Mut. Life Ins. Co. v. Mannheimer Realty Co.</u>, 188 Minn. 511, 513 (Minn., 1933). Revocation of an offer need not be explicit; all that is necessary are words or actions inconsistent with the offer. <u>Feges v. Perkins Restaurants</u>, 483 N.W.2d 701, 708 (Minn., 1992) ("an offer to make a contract may be revoked by words or conduct inconsistent with the offer at any time before the offer is accepted."); <u>Restatement of Contracts (Second)</u> § 42 ("[a]n offeree's power of acceptance is terminated when the offeree receives from the offeror a manifestation of an intention not to enter into the proposed contract.")

    D.    <u>Defendants Demonstrated Their Intent Not to Cancel the Policy</u>

The evidence at trial will show that defendant subjectively did not intend to cancel the Policy as of October 6, 1998, and that their acts evidenced this intent. The evidence will show that on or about October 6, 1998, (Defendants' Exhibit 503), Ms. Caouette obtained

automobile insurance with an effective date of October 16, 1998 (Defendant's Exhibit 505). Ms. Caouette will testify that she sought automobile insurance at about the same time as she was obtaining homeowner's insurance for the home defendants purchased on October 9. October 16, 1998 was the date that the Policy would expire absent payment of additional premium. Defendant's Exhibit 501. Ms. Caouette will testify that she meant to cancel the Policy effective October 16, not October 6, and that she erred when she wrote what appeared to be October 6. Defendants will testify that they never intended to be without automobile insurance for the period October 6 to October 16.

The evidence at trial will further show that defendants evidenced their intent not to cancel the policy as of October 6. Ms. Caouette will testify that as she was reviewing insurance documents in preparation for the October 9 closing, she noticed that the cancellation notice she sent could be read as asking for a termination date of October 6 rather than October 16. She therefore called ANPAC to enquire. She does not know whether she talked to the underwriting department or some other department. She was told the policy was still in effect, that no cancellation notice had been processed, and that she should check back the next week.

More significantly, however, defendants evidenced that they did not intend to cancel the policy by making a claim on the policy on October 10 for the accident that occurred October 9. The evidence will show that plaintiff only acted on the cancellation notice by entering it into its system on October 11. The evidence will further show that plaintiff created a claim file for the accident on October 10, thereby acknowledging that as of October 10, defendants clearly did not intend to cancel the policy as of October 6. Whether

or not the Caouette's subjectively or objectively intended to cancel the Policy as of October 6, by clearly evidencing their intent **not** to cancel the Policy prior to plaintiff's actual cancellation of the policy, plaintiff's power to accept the cancellation request was terminated. The act of making a claim on the Policy was clearly an act inconsistent with a wish to cancel the Policy.

Even if plaintiff was successful in showing that defendants intended prior to the accident to cancel the Policy as of October 6, and that they intentionally took the risk of going without auto insurance for two weeks in order to get $85 refund on their premium, the act of making a claim on the Policy was clearly inconsistent with such an intent. Since plaintiff had not acted on the cancellation request at the time defendants revoked their offer to cancel the Policy, its actions on October 11 in entering the cancellation request into its computer system was ineffective to effect the cancellation of the Policy because no request for cancellation existed by then.

Nor does defendants' negotiation of the premium refund check show any contrary intent. Having just had an automobile accident, defendants will testify that they were expecting to be receiving checks from plaintiff. The check itself does not make clear that it is a premium refund check. Defendants were further not expecting a refund check, since they will testify that they believed the Policy was in effect. Also, any finding that they intended to cancel the Policy by negotiating the check on October 28 would be absurd; such a conclusion would require a finding that in order to have the right to the $85 premium refund, defendants intentionally surrendered the right to recover on a $100,000 policy plus property damage coverage.

This conclusion is unaffected by Minn. Stat. §72A.20, which gives an insured the right to cancel a policy. Whether or not plaintiff was required to act on an insured's cancellation request, any such request by defendants had been revoked by their notice of the claim. There was therefore no cancellation request for plaintiff to act on by October 11. Plaintiff will argue that it was obliged to honor the cancellation request when it acted on it on October 11. The fact is that by October 11, there was no cancellation request, since defendants had cancelled the cancellation request by making the claim on the Policy on October 10.

Minn. Stat. §72A.20 cannot be read as giving the insured the unfettered power to request a retroactive cancellation of a policy, as plaintiff claims. If the statute gave the insured this power, any insured could purchase insurance and wait for the end of the policy period. If no claims had arisen, the customer could request cancellation effective as of the start date of the Policy and receive a full refund of the entire premium. The insured would therefore get free insurance coverage and would only have to pay for the policy if claims were made during the policy period. The evidence will show that plaintiff's own practice, despite the existence of Minn. Stat. § 72A, is to **not** automatically honor retroactive cancellation requests in excess of thirty days. Minn. Stat. § 72A, therefore, cannot mean that no matter what, the insurer had to cancel a policy as of the date requested by the customer. As in this situation, the insurer must examine the facts arising from the cancellation request and decide whether to honor it. In this case, since the cancellation request had already been revoked, plaintiff should not have, and in fact could not, honor it.

The evidence will further show that plaintiff's own actions demonstrated its intent

that the cancellation notice was ineffective. The actions of the insurance company after a purported cancellation can show whether the insurer intends that the policy was cancelled as of a certain. <u>Great Northern Life Insurance Company v. Federal Life Insurance Company</u>, 260 Ill. App. 369, 382 (1931). From October 19, 1998 to March 20, 2001, plaintiff acted in every manner as if the Policy was in effect. In this period, plaintiffs paid $20,000 in Personal Injury Payments, and property damage claims of $9,569.38. Defendants are not arguing that plaintiff's actions constitute an estoppel that would operate to enlarge coverage. Rather, they argue that the fact that plaintiff treated the Policy as if it was in effect for so many years shows that plaintiff did not believe the purported cancellation notice was effective, either. This case is similar to <u>Writers, Inc. v. West Bend Mutual Insurance Company</u>, 465 N.W.2d 419, 423 (Minn. App. 1991), in which the court stated the general rule that estoppel could not operate to enlarge coverage. The court stated, however, that the court still had to look at the parties' conduct in determining what their intent was in deciding whether coverage existed. Similarly in this case, the Court should look at plaintiff's conduct in treating the Policy was if it was in full force and effect for years in determining whether plaintiff really intended to cancel the Policy as of October 6, 1998.

    E.    <u>Plaintiff Cannot Prove Cancellation Under the Policy</u>

The purported cancellation by Ms. Caouette was not effective to cancel the policy under the terms of the policy. An insurance contract can be terminated by mutual agreement or pursuant to the terms of the contract. <u>McQuarrie v. Waseca Mut. Ins. Co.</u>, 337 N.W.2d 685, 687 (S.C. Minn., 1983); <u>Copley v. Pekin Insurance Company</u>, 111 Ill. 2d 76, 488 N.E. 2d 1004, 1008 (1986). The policy in this case provides that the policyholder can cancel the

policy "by advising us in writing when at a future date the cancellation is to be effective." Page 10, §9. The policy therefore provides only for cancellation by the simple notice by the insured at a **future** date, **not** a retroactive date. The evidence will show that while Ms. Caouette is not certain when she mailed the request, she believes she did so on or about October 6. The evidence will show, therefore, that it is more likely than not that the request was **not** for cancellation at a future date, and so would not be a valid cancellation under the Policy. Defendants are not sure, however, when the cancellation request was mailed. The burden to show each and every condition for cancellation, however, is on the plaintiff, as discussed above. Therefore, in any event, it is **plaintiff's** burden to show that the request complied with the Policy's cancellation provisions. Unless plaintiff can prove that the cancellation request was at least mailed prior to October 6, it cannot meet its burden of establishing cancellation.

III.  CONCLUSION

Defendants believe that the evidence at trial will demonstrate that they never intended to cancel the Policy effective October 6, 1998, and that any apparent cancellation request was extinguished by their making a claim on the Policy October 10, the day before plaintiff acted on the cancellation request. The decision in this case should therefore be in favor of defendants.

DEFENDANTS

By: [signature]
David S. Rintoul (ct#08465)
BROWN, PAINDIRIS & SCOTT
2252 Main Street
Glastonbury, CT 06033
(860) 659-0700

## Certification

The undersigned certifies that on March 29, 2004, he has sent a copy of the foregoing to the following address, certified mail, postage prepaid:

Stephen Broer
Halloran & Sage LLP
One Goodwin Square
225 Asylum Avenue
Hartford CT 06103

David S. Rintoul