### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AMERICAN NATIONAL PROPERTY | : | CIVIL ACTION |
| AND CASUALTY COMPANY | : | NO. 3:02 CV 1566 (MRK) |
| | : | |
| V. | : | |
| | : | |
| PHILIP L. CAOUETTE AND | : | |
| KIMBERY CAOUETTE | : | MARCH 29, 2004 |

### PLAINTIFF'S TRIAL BRIEF

**I.     INTRODUCTION**

This declaratory judgment action was commenced by the plaintiff, American

National Property and Casualty Company (hereinafter referred to as "ANPAC"), by

complaint dated September 4, 2002.  ANPAC is seeking a judgment declaring that it

has no obligation to provide underinsured motorist coverage in connection with an

automobile accident alleged to have occurred on October 9, 1998 (the "Accident") under

an automobile liability insurance policy bearing policy number 22-A-J21-113-5 (the

"Policy") ANPAC issued to the defendants, Philip L. Caouette and Kimberly Caouette.

(A certified copy of the Policy is attached to the parties' Joint Trial Memorandum (the

"JTM") a Exhibit 1.  The defendants cancelled the Policy effective October 6, 1998 by

forwarding to ANPAC a hand-written and signed writing (the "Cancellation Notice")

instructing ANPAC to do so.  (A copy of the Cancellation Notice is attached to the JTM

as Exhibit 2.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

ANPAC seeks judgment in its favor on the basis that the insurance coverage provided under the Policy does not apply to any claims asserted by anyone in connection with the Accident because the defendants cancelled the Policy prior to the Accident.

## II.    FACTS

The Policy was issued in Minnesota to the defendants while they were Minnesota residents, insuring vehicles, including the one involved in the Accident, registered and garaged in Minnesota.  (Exhibit 1 to JTM).  The effective date of the Policy was August 1, 1997 and it was renewed effective August 1, 1998. (Id.)  The Policy, while it was in effect, afforded uninsured/underinsured motorist coverage with a limit of $100,000.00 per person and $300,000.00 per accident.[1]  (Id.)

During the period between September 22, 1998 and October 9, 1998, prior to the Accident, the defendant, Kimberly Caouette, a policyholder named in the Declarations, forwarded the Cancellation Notice to ANPAC.  See, ¶11 of the defendants' Answer and Special Defenses, dated January 3, 2003, a copy of which is attached to the JTM as Exhibit 3.  The Cancellation Notice is explicit and unconditional and requests cancellation as of a date certain.  Namely, October 6, 1998.  See, transcript of the

---

[1]    The defendants concede that although the Policy has a $100,000.00 per person limit, under no circumstances could there be more than $80,000.00 in coverage available to them under the Policy because the defendants have already received $20,000.00 in Personal Injury Protection benefits from ANPAC in connection with the Accident.  See, Exhibits 4 and 5 to the JTM.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

deposition of Kimberly Caouette dated August 28, 2003, a copy of which is attached

hereto as <u>Exhibit A</u>, page 34, line 17 through page 35, line 20; transcript of the

deposition of Philip Caouette dated August 28, 2003, a copy of which is attached hereto

as <u>Exhibit B</u>, page 27, line 15 through page 28, line 16 and page 30, lines 16-21.

Kimberly Caouette initially wrote the number "9" on the Cancellation Notice signifying

the month of September, then wrote a "10" over that number, signifying the month of

October.  See, <u>Exhibit A</u>, page 36, lines 6 through 12; <u>Exhibit B</u>, page 29, lines 3

through 6.  There is no evidence indicating the precise dates when the Cancellation

Notice was drafted or mailed by the defendants or received by ANPAC.  See, <u>Exhibit A</u>,

page 36, lines 3 through 5; <u>Exhibit B</u>, page 31, lines 1 through 4; transcript of the

deposition of Kirby McKenzie dated October 14, 2003, a copy of which is attached

hereto as <u>Exhibit C</u>, page 24, lines 16 through 22.  Philip Caouette had no direct

dealings with any insurance agents in the Fall of 1998, but he approved of his wife's

decisions with respect to insurance matters.  <u>Exhibit B</u>, page 22, line 18 through page

23, line 3.

      In October, 1998, ANPAC logged all calls it received from its insureds, no matter

how big or small the insured's problem or requests were, in an underwriting log.  See,

<u>Exhibit C</u>, page 41, lines 10-25.  The defendants assert that prior to the Accident,

Kimberly Caouette notified ANPAC that she had intended to put a date of October 16,

1998 on the Cancellation Notice rather than October 6, 1998.  First Special Defense,

¶1.  The underwriting log for the Policy, which was permanently stored on microfilm in

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

May, 1999, does not contain any record of any telephone call from either defendant in 1998 concerning any underwriting issue. See, underwriting log, a copy of which is attached to the JTM as <u>Exhibit 7</u>. Furthermore, Kimberly Caouette has no records or specific recollection concerning the alleged telephone call, and she does not know what date or day of the week she made the alleged call, what time of day it was when she made the call or even whether the ANPAC representative with whom she spoke was a male or female. See, <u>Exhibit A</u>, page 38, line 10 through page 41, line 25. Moreover, the defendants concede that they never contacted ANPAC in writing concerning any alleged erroneous notations on the Cancellation Notice. See, <u>Exhibit A</u>, page 37, lines 19 through 21; <u>Exhibit B</u>, page 33, lines 2 through 5.

ANPAC received the Cancellation Notice on or before October 11, 1998.[2] ANPAC cancelled the Policy on October 11, 1998, effective as of October 6, 1998, but the cancellation did not appear in ANPAC's computer system until October 12, 1998.[3] It was ANPAC's routine business practice at that time to process cancellation requests

---

[2]    It is unknown precisely when ANPAC received the Cancellation Notice. The defendants mailed the Cancellation Notice to the accounting department, which does not process policy cancellations, rather than to the underwriting department, which does handle such cancellations. <u>Exhibit C</u>, page 12, line 13 through page 14, line 22. It is unknown when the underwriting department received the Cancellation Notice, but it cancelled the Policy on October 11, 1998. <u>Id</u>.

[3]    ANPAC's underwriting department cancelled the Policy on October 11, 1998. ANPAC's way of doing business was to enter policy cancellations into its computer system overnight prior to the next business day, October 12, 1998, which is the date listed in the Policy's history as the date the cancellation was processed. <u>Exhibit C</u>, page 25, line 25 through page 26, line 8; and page 32, lines 23 through 23.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

that were backdated less than thirty days, without requiring documentation concerning alternative insurance.  Exhibit C, page 9, line 21 through page 10, line 17.

On October 12, 1998, ANPAC issued a premium refund check to the defendants in the amount of $85.00 representing the premium ANPAC did not earn because the defendants cancelled the Policy effective October 6, 1998.  See, Exhibit 14 to the JTM. The defendants endorsed the premium refund check on or about October 29, 1998.  Id.

On October 12, 1998, ANPAC notified the Minnesota Department of Public Safety that the Policy was terminated effective October 6, 1998.  See, Exhibit 7 to the JTM.  The Minnesota Department of Public Safety received that notification on October 13, 1998 and, on October 22, 1998, it forwarded the notification to the defendants at the same address to which ANPAC mailed the defendants' premium refund check.  Id.

On or about October 10, 1998, the defendants notified ANPAC of the Accident. See, Exhibit 8 to the JTM.  As of that date, the defendants' cancellation request had not been entered into ANPAC's computer system.  Accordingly, ANPAC's claims department created a file to process Philip Caouette's claim for benefits, including Personal Injury Protection (hereinafter referred to as "PIP") benefits in connection with the Accident.

On or about October 15, 1999, Philip Caouette first asserted a possible claim for uninsured/underinsured motorist benefits.  See Exhibit 9 to the JTM.  At that time, ANPAC's records reflected that the last date of coverage under the Policy was October

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

5, 1998, four days prior to the Accident.  Accordingly, ANPAC denied Philip Caouette's claim for uninsured/underinsured motorist benefits.

Kimberly Caouette was authorized to cancel the Policy effective October 6, 1998. (Exhibit 1 to JTM, Exhibit B, page 22, line 18 through page 23, line 3).  There is no evidence establishing that the Cancellation Notice did not comply with the Policy's cancellation provisions.  (Cancellation Notice; Exhibit A, page 36, lines 3 through 5; Exhibit B, page 31, lines 1 through 4; Exhibit C, page 24, lines 16 through 22).  There is no evidence indicating the precise dates when the Cancellation Notice was drafted or mailed by the defendants or received by ANPAC.  (Id.).  (See also, Exhibit C, page 24, lines 16 through 22).  The defendants never contacted ANPAC in writing concerning any alleged erroneous notations on the Cancellation Notice.  (Exhibit A, page 37, lines 19 through 21; Exhibit B, page 33, lines 2 through 5).  There is no evidence that any party to the insurance contract failed to comply with its terms.

When, or about October 11, 1998, ANPAC honored the defendants' clear cancellation request by making the cancellation effective October 6, 1998, it was complying with Minnesota law.  (Minnesota Statutes §72A.20, Subsection 17(e); Exhibit C, page 12, line 13 through page 14, line 22 and page 24, lines 16 through 22 and page 41, lines 10-25 and page 25, line 25 through page 26, line 8 and page 32, lines 23 through 23).  There is no evidence indicating when the defendants first discussed the issue of automobile insurance with their Connecticut insurance agent, Edward Lewis, or when they applied for automobile liability coverage with Allstate or why coverage with

- 6 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Allstate was not made effective until October 16, 1998.  (Exhibit A, page 33, line 9 through page 34, line 9; Exhibit B, page 24, line 15 through page 25, line 11).  The earliest document referencing any Allstate automobile policy is dated October 27, 1998. (See, various Allstate documents, attached to the JTM as Exhibits 18-26).

All benefits paid to the defendants by ANPAC were paid by mistake because, at the time when the claim for benefits was initially made, on or about October 10, 1998, the defendants' cancellation request had not been entered into ANPAC's computer system.  (Exhibit C, page 12, line 13 through page 14, line 22 and page 24, lines 16 through 22 and page 41, lines 10-25 and page 25, line 25 through page 26, line 8 and page 32, lines 23 through 23).  Moreover, when Philip Caouette first asserted a possible claim for uninsured/underinsured motorist benefits on or about October 15, 1999, ANPAC denied his claim for such benefits because, by that time, ANPAC's records reflected that the last date of coverage under the Policy was October 5, 1998, four days prior to the Accident.  (Id.)  ANPAC never waived its right to deny underinsured motorists coverage to the defendants based upon the defendants' cancellation of the Policy effective October 6, 1998 because it never paid any benefits to the defendants knowing it was entitled to exercise such a right with knowledge that the defendants cancelled the Policy effective prior to the date of the Accident.  (Id).

**III.    The ANPAC Policy**

The Policy provides, in pertinent part, the following:

**DEFINITIONS USED THROUGHOUT THIS POLICY**



One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

(2)    "**You**" . . . mean[s] the Policyholder[s] named in the Declarations and spouse if living in the same household.

## PART IV - UNINSURED MOTORISTS
## LIMITS OF LIABILITY

Amounts payable will be reduced by . . .

2.    a payment under the [PIP] Coverage of this policy . . . .

## PART V - GENERAL PROVISIONS

9.    **CANCELLATION . . . OF THIS POLICY**

**You** may cancel this policy by . . . advising us   in writing when at a future date the cancellation is to be effective.

Upon cancellation **you** may be entitled to a premium refund; if so, we will send it to **you** . . . .   If **you** cancel the policy, any return of premium will be refunded within 30 days following the company's receipt of the request for cancellation.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## IV.    LEGAL STANDARDS

### A.    Choice of Law

Minnesota Law applies.[4]  See, JTM, Stipulations of Law, Paragraph 1.

### B.    Minnesota Law

Minnesota Statutes §72A.20, Subsection17 (e) provides that:  "The owner [of an insurance policy] may cancel [that policy] . . . at <u>any</u> <u>time</u> during the policy period.  This provision supersedes any inconsistent provision of law or any inconsistent policy provision."  (Emphasis added.)  The language in the Policy permits an insured to "cancel this policy by returning to [ANPAC] or by advising [ANPAC] in writing when . . . the cancellation is to be effective."  (Emphasis added.)  Policy, Part V, Section 9.

In Minnesota, "General principles of contract interpretation apply to insurance policies."  <u>Edgley v. </u>Lappe, 342 F.2d 884, 888 (8th Cir. 2003); <u>Lobeck v. State Farm</u>

---

[4]    ANPAC submits that even if Connecticut law is applied in this case, it would still be entitled to judgment in its favor as a matter of law because the public policy regarding cancellation of insurance policies would be satisfied.  In <u>Majernicek v. Hartford Casualty Inc. Co.</u>, 240 Conn. 86, 92, 688 A.2d 1330, 1333 (1997) the Connecticut Supreme Court noted that "in enacting Section 38a-343 (a) [concerning an insurer's ability to cancel an automobile liability policy] the legislature appears to have intended to eliminate the potentially harsh consequences to an insured of driving without knowing that his or her policy was inoperative.  See 13 H.R. Proc., Pt. 10, 1969 Sess., p. 4437, remarks of Representative Gerald Stevens ("[i]f ... someone has his insurance policy canceled and is driving under the mistaken impression that he has insurance and subsequently is involved in an accident, the consequences can be rather severe").  In the instant matter, the defendants expressly requested cancellation of the Policy effective October 6, 1998, they endorsed the premium refund check and were sent notification from the Minnesota Department of Public Safety confirming that the Policy was cancelled effective October 6, 1998.  Moreover, they were fully aware that the Allstate policy did not go into effect until October 16, 1998.  Accordingly, ANPAC's conduct in complying with the express request of its insureds to cancel the Policy effective October 6, 1998 is not inconsistent with Connecticut public policy.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Mut. Auto. Ins. Co., 582 N.W.2d 246, 249 (Minn.1998); Midwest Family Mut. Ins. Co. v. Schmitt, 651 N.W.2d 843, 845 (Minn.App., 2002).  See also, Andrew L. Youngquist, Inc. v. Cincinnati Ins. Co., 625 N.W.2d 178, 183 (Minn.App., 2001).

   Under Minnesota law, an insurance contract may be cancelled even where the parties do not strictly comply with the contract's cancellation requirements; R.T. Harper v. Lyndon Life Ins. Co., 1999 WL 203510 (Minn.App., 1999); or where there is not strict compliance with statutory requirements.  Evans v. G.E.I.C.O., 257 N.W.2d 689, 692 (Minn. 1977) (cancellation of automobile policy not vitiated by defect in notice of cancellation where statute did not prescribe penalty and where insured was not prejudiced thereby).  "In order to constitute notice of cancellation, the notice must be explicit, unconditional, and use unequivocal language.  It must state that the policy is, or without further notice will stand, canceled as of a certain day."  McQuarrie v. Waeca Mut. Ins. Co., 337 N.W.2d 685, 687 (Minn. 1983).  Rescission of an insurance contract may be accomplished by mutual agreement. Merchants & Farmers Mutual Casualty Co. v. St. Paul-Mercury Indemnity Co., 8 N.W.2d 827, 828 (1943).  Whether such a rescission has been accomplished depends on the intent of the parties as evidenced by their acts. McQuarrie, at 688.  An insured's acceptance and use of a premium refund check manifests an intent to cancel the policy.  Mutual of Omaha Ins. Co. v. Korengold, 241 N.W.2d 651, 652 (1976) (insured indicated intent to cancel policy by cashing premium refund check).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

C.   **Estoppel/Waiver**

Minnesota's courts have determined that the doctrine of estoppel will not operate to enlarge coverage under an insurance policy or create coverage where no coverage existed prior to the loss.  Northwest Airlines, Inc. v. Federal Ins. Co., 32 F.3d 349, 357 (8th Cir. 1994); Shannon v. Great American Ins. Co., 276 N.W.2d 77, 78 (Minn. 1979); Writer's, Inc. v. West Bend Mut. Ins. Co., 465 N.W.2d 419, 423 (Minn. App. 1991); Minnesota Mutual Fire & Casualty Co, Rudzinski, 347 N.W.2d 848, 851 (Minn.App. 1984); Winthrop And Weinstine, P.A. v. Travelers Casualty and Surety Co., 187 F.3d 871, 877 (8th Cir. 1999).  Moreover, an insurer is entitled to recover an amount paid to an insured by mistake which exceeds the liability fixed by an insurance policy. Equitable Life Insurance Society of U.S. v. Bachrach, 265 Minn. 83, 90-91 120 N.W. 2d 327, 332-333 (1963) (the right to seek restitution is based on the fact that the insurer made a payment which it was not obligated to pay under the insurance contract).  See also, Winthrop and Weinstine v. Travelers Cas. And Sur. Co., 993 F. Supp. 1248, 1257 (D. Minn. 1998).  This rule extends to no-fault insurance.  Wallace v. Tri-State Ins. Co., 302 N.W.2d 337, 341 (Minn. 1980); Minnesota Mutual Fire & Casualty Co. v. Rudzinski, supra, 347 N.W.2d at 852.

Additionally, an insurer's right to deny the existence of a policy may be waived only under circumstances where an insurer entitled to exercise such a right, with knowledge of the situation, treats the contract as in force and deals with the insured in a manner consistent only with a purpose on its part to regard the contract as still

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

subsisting and not terminated.  See, e.g., <u>Lievers v. National Ins. Underwriters</u>, 257

Minn. 268, 272, 101 N.W.2d 817, 820 (Minn., 1960); <u>Blazek v. North American Life &</u>

<u>Casualty Co.</u>, 251 Minn. 130, 142-43, 87 N.W.2d 36, 45-46 (1957).

## IV.    <u>ARGUMENT OF LAW</u>

### A.    <u>The Defendants Cancelled The Policy Effective October 6, 1998</u>

Prior to the Accident, the defendants forwarded to ANPAC a written and signed

unconditional request that the Policy be cancelled effective October 6, 1998.  In so

doing, the defendants unambiguously exercised their express right under Minnesota law

to cancel the Policy.  See, M.S. § 72A.20.  Moreover, the defendants also exercised

their right under the Policy to cancel the Policy by advising ANPAC in writing when the

cancellation was to be effective.  See, Policy, Part V, Section 9.  The Cancellation

Notice was in compliance with Minnesota law and the terms of the Policy.  There is no

evidence that the Cancellation Notice did not comply with Minnesota Law or the terms

of the Policy.  On or about October 11, 1998, ANPAC honored the defendants' clear

cancellation request by making the cancellation effective October 6, 1998.

The defendants' intent to cancel the Policy effective October 6, 1998 is reflected

also in the fact that Kimberly Caouette initially wrote the number "9" on the Cancellation

Notice signifying the month of September, then wrote a "10" over that number, signifying

the month of October.  Presumably, therefore, had Kimberly Caouette intended to write

a number other than "6," she would have corrected her error.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Additionally, the defendants, undeniably, endorsed the premium refund check representing return of unearned premium after October 5, 1998.  This fact is one more indication that the defendants intentionally cancelled the Policy effective October 6, 1998.

Furthermore, the defendants never contacted ANPAC in writing concerning any alleged erroneous notations on the Cancellation Notice and there is no record that they ever advised ANPAC verbally of any such error.  Even after the Minnesota Department of Public Safety forwarded notice to the defendants on or about October 22, 1998 that the Policy was cancelled effective October 6, 1998, the defendants failed to contact ANPAC concerning any alleged errors in the Cancellation Notice.  In fact, it was not until March 20, 2003, when the parties appeared for a settlement conference with the Honorable Donna F. Martinez, that the defendants first informed ANPAC, through its counsel, that Kimberly Caouette supposedly telephoned ANPAC between October 6, 1998 and October 9, 1998 to "retract" the subject Cancellation Notice.

The fact that the Defendants did not have automobile liability insurance during the period between October 6, 1998 and October 16, 1998, when their Allstate policy went into effect,[5] does not alter the inescapable conclusion that the defendants cancelled the Policy effective October 6, 1998.  Although there is no evidence indicating

---

[5]     See, Exhibits 11-14 of the JTM reflecting that the Allstate policy became effective October 16, 1998, and that the earliest documents concerning the Allstate automobile policy are dated October 27, 1998.  It is possible, therefore, that the defendants did not obtain automobile liability insurance through Allstate until October 27, 1998.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

when the defendants first discussed the issue of automobile insurance with their Connecticut insurance agent, Edward Lewis,[6] or when they applied for automobile liability coverage with Allstate or why coverage with Allstate was not made effective until October 16, 1998, such unanswered questions are not material to the cancellation issue.  What is material is whether the signed Cancellation Notice unambiguously requests cancellation as of a date certain, October 6, 1998, and whether the defendants endorsed the premium refund check refunding unearned premium beyond October 6, 1998.  Because the defendants expressly requested cancellation of the Policy effective October 6, 1998 and then endorsed the premium refund check, coverage under the Policy ceased to exist after October 5, 1998.

Nevertheless, the defendants assert that because there is no conclusive evidence establishing that the Cancellation Notice was drafted on or before October 5, 1998, the Cancellation Notice, although complying with Minnesota law, does not technically comply with the Policy's cancellation provision.  In other words, the defendants contend that because the Policy states that it may be cancelled if an insured notifies ANPAC when, at a future date, the cancellation is to be effective, and because there is some doubt as to the precise date that the Cancellation Notice was drafted, the instant Cancellation Notice is necessarily void.  This argument is mistaken.

---

[6]     There is no evidence indicating when the defendants first discussed the issue of automobile insurance with their Connecticut insurance agent, Edward Lewis.  See, Exhibit 1 page 33, line 9 through page 34, line 9; Exhibit 2 page 24, line 15 through page 25, line 11.  That subject may have been discussed anytime after the defendants addressed their need for homeowner's coverage with Mr. Lewis, which may have occurred prior to October, 1998.  Id.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

First, there is no evidence that any party to the insurance contract failed to comply with its terms.  To the extent that the defendants seek to contend that the Cancellation Notice was not drafted until on or after October 6, 1998, they have no evidence.  Indeed, the defendants freely admit that they have no idea when the cancellation notice was drafted or mailed.  Thus, the defendants cannot establish that the Cancellation Notice did not comply with the Policy's cancellation provisions.  For this reason, the Cancellation Notice must be deemed to comply with the Policy provision concerning cancellation and ANPAC is entitled to judgment in its favor as a matter of law.

Second, even if the defendants could establish that the Cancellation Notice was not drafted or mailed until on or after October 6, 1998, which they cannot, their express request that the Policy be cancelled effective October 6, 1998 was required to be given effect under Minnesota law.  Specifically, Minnesota Statutes §72A.20, Subsection17 (e) provides that:  "The owner [of an insurance policy] may cancel [that policy] . . . at <u>any time</u> during the policy period.  This provision supersedes any inconsistent provision of law or any inconsistent policy provision."  (Emphasis added.)  Pursuant to that express language, the defendants were entitled to cancel the Policy at any time.  They were not limited to canceling the Policy only by specifying a future date.  Thus, ANPAC could not have enforced the "future date" clause, even if it wanted to.  In fact, consistent with Minnesota law, it was ANPAC's routine business practice to process cancellation

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

requests that were backdated less than thirty days, without requiring documentation concerning alternative insurance.

Moreover, statutory law aside, Minnesota countenances technical non-compliance with policies' cancellation provisions. In R.T. Harper v. Lyndon Life Ins. Co., supra, the Minnesota Appellate Court examined an insured's claim that the cancellation of his wife's life insurance policy was not effective because he never signed the request for cancellation form on the reverse side of the policy, as the express terms of the subject policy required him to do to effect cancellation. Id., *1. In overruling the plaintiff's arguments, the court noted that an insurance contract may be cancelled by mutual agreement, even where the parties fail to comply with the contract's cancellation requirements. Id. See also, McQuarrie v. Waseca Mut. Ins. Co., 337 N.W.2d 685, 688 (Minn.1983) (holding parties cancelled insurance policy by mutual agreement where insurer sent cancellation notice that did not comply with policy terms and credited unearned premiums). Whether an insurance contract has been cancelled or rescinded depends upon the intent of the parties as evidenced by their acts. McQuarrie, at 687-88. Although, ordinarily, whether the parties intended cancellation is a question of fact for the jury, the court may determine as a matter of law whether a policy has been cancelled where the undisputed facts permit only one inference as to the parties' intent. Harper, at *1.

The Harper court noted that the undisputed facts conclusively established that the plaintiff intended to cancel the policy he sought to enforce, where he and his wife,

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

faced with foreclosure proceedings, approached the defendant insurer and, rather than taking out a loan, signed a request for cancellation of insurance form. Id., at *2. Upon signing the form, the plaintiff and his wife obtained a check from the defendant in the amount of the unearned premiums and cashed the check. Id. The court found these facts sufficient to conclude, as a matter, of law, that the plaintiff intended to cancel the subject policy. Id.

Here, the defendants admit that, prior to the Accident, they forwarded to ANPAC a written and signed unconditional request that the Policy be cancelled effective October 6, 1998. Moreover, they concede that they endorsed the premium refund check. That conduct manifests their intent to cancel the Policy effective October 6, 1998. See, Mutual of Omaha Ins. Co., supra, at 652. Thus, the undisputed facts in the instant matter reveal conclusively that the defendants intended to, and did, cancel the Policy effective October 6, 1998.

**B.    ANPAC Is Not Precluded From Asserting That The Policy Was Cancelled Effective October 6, 1998**

The defendants' cancellation request was processed on October 11, 1998 but was not entered into the computer system until October 12, 1998. Accordingly, when ANPAC received Philip Caouette's claim for benefits on October 10, 1998, the information available to ANPAC indicated that the Policy was in force as of October 9, 1998 and, therefore, ANPAC paid PIP and property damage benefits. The defendants claim that ANPAC is precluded from claiming that the last date of coverage under the

- 17 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Policy was October 5, 1998, given its payment of benefits.  The defendants' arguments in this regard are misplaced.

Minnesota's courts have determined that the doctrine of estoppel will not operate to enlarge coverage under an insurance policy or create coverage where no coverage existed prior to the loss.  Northwest Airlines, Inc. v. Federal Ins. Co., supra, 32 F.3d at 357; Shannon v. Great American Ins. Co., supra, 276 N.W.2d at 78.  Moreover, an insurer is entitled to recover an amount paid to an insured by mistake which exceeds the liability fixed by an insurance policy.  Equitable Life Insurance Society of U.S. v. Bachrach, supra, 120 N.W. 2d at 332-333.  Additionally, an insurer's right to deny the existence of a policy cannot be waived unless the insurer entitled to exercise such a right, with knowledge of the situation, treats the contract as in force and deals with the insured in a manner consistent only with a purpose on its part to regard the contract as still subsisting and not terminated.  See, e.g., Lievers v. National Ins. Underwriters, supra, 257 Minn. at 272, 101 N.W.2d at 820; Blazek v. North American Life & Casualty Co., supra, 251 Minn. at 142-43, 87 N.W.2d at 45-46.

Here, coverage was cancelled prior to the Accident.  Accordingly, coverage cannot be created by estoppel because no coverage existed at the time of the subject loss.  Moreover, because ANPAC would be entitled to a refund of the payments it mistakenly made,[7] it stands to reason that it may properly assert a lack of coverage in

---

[7]     ANPAC is not pursuing a refund of the any erroneously made payments in the instant action.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

the context of the instant underinsured motorist claim.  Furthermore, because ANPAC

was unaware, when it processed the claim on October 10, 1998, that the defendants

requested that the Policy be cancelled effective October 6, 1998, it cannot be said that

ANPAC was aware that the Policy had been cancelled prior to the Accident and that it

acted consistent only with a purpose to regard the Policy as not terminated.

In sum, ANPAC is not precluded from asserting that the Policy was cancelled

effective October 6, 1998 merely because it paid benefits.  ANPAC's actions in making

such payments do not evidence an intent that the Policy was not cancelled effective

October 6, 1998.  Thus, ANPAC is not precluded from denying that the Policy was

cancelled effective October 6, 1998.

### C.    Kimberly Caouette Was Authorized To Cancel The Policy

The Policy expressly defines the word "you" to mean Philip and Kimberly

Caouette and his or her spouse.  The Policy allows "you," meaning either Philip or

Kimberly Caouette, to cancel the Policy.  Moreover, Philip Caouette conceded that his

wife handled all insurance matters on his behalf and that he approved of his wife's

decisions with respect to insurance matters.  Accordingly, Kimberly Caouette was

authorized to cancel the Policy.  Nevertheless, the defendants claim Kimberly Caouette

was not authorized to cancel the Policy effective October 6, 1998.  This argument is

without merit because it flies in the face of the express language of the Policy

authorizing Kimberly Caouette to cancel the Policy and is directly contrary to Philip

Caouette's admission that his wife handled all of the family's insurance needs and that

- 19 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

he approved of her insurance-related decisions.  Accordingly, the defendants cannot

properly claim that Kimberly Caouette was not authorized to cancel the Policy.

**V.**    **CONCLUSION**

Based on the foregoing, ANPAC respectfully requests the court to enter a

judgment declaring that the plaintiff has no coverage obligations with respect to any

claims asserted in connection with the Accident.

**PLAINTIFF,**
**AMERICAN NATIONAL PROPERTY AND**
**CASUALTY COMPANY**


By _____
      Stephen H. Broer
      HALLORAN & SAGE  LLP
      Fed. Bar #ct21637
      One Goodwin Square
      225 Asylum Street
      Hartford, CT 06103
      (860) 522-6103

- 20 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## **CERTIFICATION**

This is to certify that on this 30th day of March, 2004, a copy of the foregoing was mailed, postage-paid to:

David S. Rintoul, Esq.
Brown Paindiris & Scott LLP
2252 Main Street
Glastonbury, CT  06033

_____
Stephen H. Broer

532340.1(HSFP)

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105