FILED

Apr 23  2 38 PM '04

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AMERICAN NATIONAL PROPERTY<br>AND CASUALTY COMPANY | : | CIVIL ACTION<br>NO. 3:02 CV 1566 (MRK) |
| V. | : | |
| PHILIP L. CAOUETTE AND<br>KIMBERY CAOUETTE | : | APRIL 21, 2004 |

## PLAINTIFF'S SUPPLEMENTAL BRIEF
## REGARDING MINNESOTA STATUTES SECTION 60A.08

In accordance with the Court's oral order of April 20, 2004, the Plaintiff, American National Property and Casualty Company ("ANPAC"), hereby submits its report concerning the inapplicability of Minnesota Statutes § 60A.08, subd. 14 to the instant matter. Specifically, during the course of closing arguments on April 20, 2004, the defendants' counsel argued, for the first time, that the Statute renders the cancellation of their policy void and unenforceable. The Court appeared to give credence to this argument, pointedly requesting that ANPAC's counsel delineate the precise steps ANPAC took to comply with the statute when it processed the defendants' cancellation request. Due to the fact that the statute had never been raised prior to closing arguments, and considering that ANPAC's counsel, therefore, did not have an opportunity to analyze the impact of the Statute upon the issues involved in this case, the Court pemitted ANPAC until this date to file a report discussing the Statute.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

On its face, the Statute is inapplicable to the instant proceeding. Minnesota Statutes § 60A.08 is comprised of fourteen subdivisions regulating contracts of insurance. During closing arguments, the defendants' counsel placed great emphasis on subdivision 14 of the § 60A-08. That subdivision provides as follows:

> **Subd. 14. Agreement to rescind policy or release bad faith claim.**
>
> (a) If the insurer has knowledge of any claims against the insured that would remain unsatisfied due to the financial condition of the insured, the insurer and the insured may not agree to:
>
>     (1) rescind the policy; or
>
>     (2) directly or indirectly transfer to, or release to, the insurer the insured's claim or potential claim against the insurer based upon the insurer's refusal to settle a claim against the insured.
>
> (b) Before entering into an agreement described in paragraph (a), an insurer must make a good faith effort to ascertain: (1) the existence and identity of all claims against the policy; and (2) the financial condition of the insured.
>
> (c) The insured must provide reasonable financial information upon request of the insurer.
>
> (d) An agreement made in violation of this section is void and unenforceable.

Id. Notably, the defendants' counsel contends that the Statute required ANPAC to comply with subsection (b) of subdivision 14, including making a good faith effort to ascertain the existence and identity of all claims against the subject ANPAC policy and

-2-

One Goodwin Square  
225 Asylum Street  
Hartford, CT 06103

HALLORAN  
& SAGE LLP

Phone (860) 522-6103  
Fax (860) 548-0006  
Juris No. 26105

the financial condition of the defendants prior to giving effect to the defendants' cancellation request. The defendants' counsel argues that unless ANPAC demonstrates that it complied with the Statute when it processed the defendants' cancellation request, the subject cancellation is void. However, because the Statute does not apply in this case, it cannot be said that ANPAC was required to comply with paragraph (b) in processing the defendants' cancellation request.

Under Minnesota law, the construction of a statute is a question of law and is subject to de novo review on appeal. Doe v. Minnesota State Bd. of Medical Examiners, 435 N.W.2d 45, 48 (Minn.1989). Moreover, a statute should be construed as a whole and various provisions of the statute should be interpreted in light of each other. Anderson v. Commissioner of Taxation, 253 Minn. 528, 533, 93 N.W.2d 523, 528 (1959). "Words of a statute generally should be given their ordinary meaning. . . . If a statute is clear and unambiguous, the language determines its meaning. . . . Thus, in the absence of ambiguous language, we may not consider legislative history or intent except as it is embodied in the statute's terms. . . . [L]iteral enforcement is required when the language has a definite meaning and is not absurd or contradictory." (Citations omitted; internal quotation marks omitted.) State v. Sebasky, 547 N.W.2d 93, 99 (Minn.App.,1996). If a statute is ambiguous, the court "must ascertain and effect the intent of the legislature. . . . The legislature's intent may be ascertained by considering, inter alia, the occasion and necessity of the law, the circumstances under which it was enacted, the mischief to be remedied, the object to be obtained and the consequences

- 3 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

of a particular interpretation." (Citation omitted.) <u>City of St. Paul v. Spencer</u>, 497 N.W.2d 305, 30 (Minn.App.,1993).

Section 60A-08, subdivision 14 by its express terms unambiguously applies to agreements to rescind policies. The instant matter does not involve the rescission of an insurance policy. Rather, this case involves the cancellation of a policy effectuated pursuant to the defendants' explicit cancellation request. Unless the court finds, as fact, that the defendants rescinded the policy, rather than cancelled it, the Statute would not be applicable in this case.

Additionally, paragraph (b) of the Statute expressly and unambiguously applies only to situations described in paragraph (a). That is, it is applicable only to situations where the insurer has knowledge of claims against the insured that would remain unsatisfied due to the financial condition of the insured. On its face, therefore, the Statute applies only where the insurer has knowledge both that a claim has been asserted against its insured and knowledge that the claim would remain unsatisfied due to the insured's financial condition. Thus, before the Statute could be deemed applicable in this case, the court would have to find, as fact, that ANPAC had knowledge of a claim against the defendants and that such claim would remain unsatisfied. There is no evidence supporting such a finding.

If the Court determines that the Statute is ambiguous as to whether paragraph (b) applies only to agreements arising under paragraph (a), it should look to the legislative history of the Statute. The present version of the Statute went into effect on

- 4 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

January 1, 1997. Previously, paragraph (b) did not contain an express reference to paragraph (a). In 1996, the legislature amended the paragraph (b) to substitute "described in paragraph (a)" for "to rescind a policy." See, 1996 Minn. Sess. Law Serv. Ch. 446 (S.F. 1980) (WEST).[1] Thus, it is apparent that the provisions stated in paragraph (b) apply only to situations expressly delineated in paragraph (a). Here, there is no evidence indicating that ANPAC had knowledge of a claim against the

---

[1] The legislative history of the Statute reveals, in relevant part, the following:

Section 1. Minnesota Statutes 1994, section 60A.08, subdivision 14, is amended to read:

<< MN ST § 60A.08 >>

Subd. 14. AGREEMENT TO RESCIND POLICY <<+OR RELEASE BAD FAITH CLAIM+>>. (a) If the insurer has knowledge of any claims against the insured that would remain unsatisfied due to the financial condition of the insured, the insurer and the insured may not agree to<<+:+>>
<<+(1)+>> rescind the policy<<+; or+>>
<<+(2) directly or indirectly transfer to, or release to, the insurer the insured's claim or potential claim against the insurer based upon the insurer's refusal to settle a claim against the insured+>>.
(b) Before entering into an agreement <<-to rescind a policy->><<+ described in paragraph (a)+>>, an insurer must make a good faith effort to ascertain: (1) the existence and identity of all claims against the policy; and (2) the financial condition of the insured.
(c) <<+The insured must provide reasonable financial information upon request of the insurer.+>>
<<+(d)+>> An agreement made in violation of this section is void and unenforceable.

1996 Minn. Sess. Law Serv. Ch. 446 (S.F. 1980) (WEST).

- 5 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

defendants or that such claim would remain unsatisfied. Thus, the Statute does not apply in this case.

Moreover, the only case which the plaintiff was able to locate which discussed the Statute affirms ANPAC's position concerning the inapplicability of the Statute to the instant matter. In <u>In re Mathews</u>, 207 B.R. 631 (Bkrtcy.D.Minn.,1997), the Minnesota Bankruptcy Court noted that "[t]he Minnesota statutes that govern the multiple relationships among liability insurers, insureds, and claimants are reflections of public policy, as recognized by the legislature. So, too, are the decisions of the Minnesota appellate courts that have applied such statutes . . . ." <u>Id.</u>, 638. The Court went on to state that:

> Minn.Stat. § 60A.08, subd. 14, strictly regulates the ability of a liability insurer to induce its insured to rescind a policy. It reflects a policy judgment on the part of the legislature: insurers may not induce their insureds to back out of their relationship entirely, and may not otherwise knowingly buy their way out of situations where they will have to bear the duties of defense and indemnification to the contractual limits. . . . In a very real way, subd. 14 complements the judicially-recognized covenant of good faith. From a different angle, it too prohibits an insurer from leaving an insured vulnerable to a large claim, where the insured is currently or prospectively insolvent.

<u>Id.</u>, 641. The Court added that "the public policy [is] discouraging collusion--the overreaching combination of two parties to a multi-sided dispute, using the forms of law to fraudulently circumvent the rights of other parties and the legal protections given to those rights. . . ." <u>Id.</u>, 641-42.

- 6 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

In light of the plain text of the Statute, combined with the purpose of the Statute as articulated by the Court in <u>In re Mathews</u>, it is clear that the Statute is designed to apply only in those instances where the insurer and the insured have acted in bad faith. There is no evidence that either party in the instant matter acted in bad faith with respect to the subject cancellation. In fact, there is no allegation that any party acted in bad faith with respect to the cancellation.

For all of the foregoing reasons, ANPAC respectfully requests that the Court neither consider nor apply the Statute in rendering its decision.

PLAINTIFF,
AMERICAN NATIONAL PROPERTY
AND CASUALTY COMPANY

By _____  Date: 4/21/04
Stephen H. Broer
HALLORAN & SAGE LLP
Fed. Bar #ct21637
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
(860) 522-6103

-7-

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## CERTIFICATION

This is to certify that on this 21st day of April, 2004, a copy of the foregoing was mailed, postage-paid to:

David S. Rintoul, Esq.
Brown Paindiris & Scott LLP
2252 Main Street
Glastonbury, CT  06033

Stephen H. Broer

541397.1(HSFP)

- 8 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105