

FILED

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AMERICAN NATIONAL PROPERTY, | : | CIVIL ACTION |
| AND CASUALTY COMPANY | | |
| PLAINTIFF, | : | NO. 302CV1566 (MRK) |
| V | : | |
| PHILIP L. CAOUETTE; AND KIMBERLY | : | |
| CAOUETTE | | |
| DEFENDANTS. | : | APRIL 22, 2004 |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S SUPPLEMENTAL
BRIEF RE MINN. STAT. 60A.08**

Pursuant to the Court's order at the conclusion of closing statements, defendants submit this memorandum regarding the effect of Minnesota Statutes 06A.08 on this case, and also respond to plaintiff's brief on this issue.

The statute by its terms states that prior to rescinding an insurance policy, an insurer must make a good faith effort to determine the existence and identity of all claims on the policy, and the financial condition of the insured. If an insurer fails in this duty, any agreement to rescind is void and unenforceable.

This statute is significant to this case for two reasons.

First, whether or not the statute applies to this particular case, the statute supports defendants' claim that a cancellation request is not effective on mailing or receipt, but only when the insurance company processes it. Since there is a duty of inquiry prior to canceling

a policy, a request for cancellation cannot be effective upon mailing or simply upon receipt by the insurer. Under any reading of the statute, the insurer has to determine whether it has knowledge of a claim that might go unsatisfied if the cancellation request is honored. Therefore, no cancellation request can be valid until it is acted upon since ANPAC could not determine whether it had knowledge of such a claim until it had actual knowledge of the request and had processed it through its mainframe. The existence of the duty under the statute means that the cancellation request could not have taken effect until ANPAC processed the request, whether or not the statute applies in this case.

Second, the statute is significant because it makes ANPAC's cancellation void and unenforceable. Plaintiff argues that the statute requires that the insurer have knowledge of claims against the insured, as referenced in subsection (a) of the statute, before the obligation in subsection (b) to conduct the good faith examination arises. The statute is not so limited. Subsection (b) does not state that if subsection (a) applies, the good faith obligation arises. Instead, subsection (b) states that the good faith inquiry obligation arises with respect to the **agreements** described in subsection (a), which are an agreement to rescind a policy or an agreement to waive or transfer a bad faith insurance claim. The good faith inquiry obligation, therefore, arises in connection with any of the **agreements** specified in subsection (a), rather than only when subsection (a) applies. Under the plain language of

the statute, therefore, ANPAC had a duty of good faith inquiry prior to rescinding the policy on October 12.

Plaintiff argues that the reference to subsection (a) added in 1996 shows the legislature's intent that the good faith obligation of subsection (b) only arises when subsection (a) applies. This is not the most logical interpretation of the intent of the amendment of subsection (b). Prior to this amendment to the statute, subsection (a) only applied to agreements to rescind a policy. See footnote 1 of plaintiff's brief. Therefore, subsection (b), rather than referring to subsection (a), simply stated that the good faith obligation arose in connection with an agreement to rescind. In the amendment, however, the legislature amended subsection (a) to add an agreement to release or transfer a bad faith insurance claim to the types of agreements that would trigger the good faith inquiry obligation. Subsection (b), rather than repeating the type of agreements that triggered the good faith inquiry obligation, simply refers to the agreements discussed in subsection (a). If the legislature had intended only to impose the good faith inquiry obligation on insurers who had actual notice of claims, it would have done so.

Such an interpretation of the statute also does not make sense because it would make inquiry obligation language superfluous. Why should the statute impose a duty of inquiry regarding the existence of a claim in subsection (b) only in cases when the insurer has actual

knowledge of a claim? If the insurer has actual knowledge of a claim under subsection (a), there would be no reason to apply the duty of inquiry under subsection (b) as well. The only way to give meaning to the inquiry obligation in subsection (b) is to **not** require actual knowledge for the inquiry obligation to arise. Since plaintiff's interpretation of the statute would render subsection (b) superfluous, the Court should reject it. Duluth Firemen's Relief Ass'n v. Duluth, 361 N.W.2d 381, 385 (Minn., 1985) ("a statute is to be construed, if possible, so that no word, phrase, or sentence is superfluous, void, or insignificant.").

Plaintiff further asserts that the statute only applies if the insured and the insurer are acting in bad faith. The statute contains no such limitation. Plaintiff cites the case of In re Mathews, 207 B.R. 631 (Bkrtcy.D.Minn., 1997), a case that did involve bad faith, in support of this argument. But, the fact that the statute is intended to apply to situations involving bad faith does not mean that it is limited to situations involving bad faith. Since the statute itself contains no such limitation, bad faith is a sufficient but not a necessary condition for the statute to apply. It would violate the very principles of statutory construction plaintiff cites in its brief for this Court to add a limitation to the statute that is nowhere found in the statute itself. Further, adding a requirement of bad faith would also again render subsection (b) superfluous: to be in bad faith, the insurer would already have to know about the existence of claim. There would be no reason to impose a duty on inquiry if the insurer

already knew of a claim. Subsection (b) only makes sense and has meaning if the duty of inquiry arises even if the insurer has no knowledge of a claim.

Minn. Stat. 60A.08, Subs. 14 provides further support for defendants' contention that the cancellation request only became effective when ANPAC had completed processing it on October 12, 1998. If the statute applies, then the act of canceling the policy is void and enforceable. If the statute doesn't apply, the existence of the duty shows that any cancellation request can only be effective upon processing, which occurred on October 12, after the claim accrued on the policy. ANPAC is therefore liable on the policy.

DEFENDANTS

By: _____
David S. Rintoul (ct#08456)
BROWN, PAINDIRIS & SCOTT
2252 Main Street
Glastonbury, CT 06033
(860) 659-0700
(860) 652-4382 - fax

## Certification

The undersigned certifies that on April 22, 2004, he faxed and sent a copy of the foregoing, first-class mail, postage prepaid, to:

>Stephen Broer
>Halloran & Sage LLP
>One Goodwin Square
>225 Asylum Avenue
>Hartford CT 06103

_____
David S. Rintoul